Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| RAFAEL SANTIAGO RÍOS<br><br>Recurrido<br><br>v.<br><br>**LT AUTOS LLC H/N/C TOYOTA MONUMENTAL PONCE**; USAA FEDERAL SAVINGS BANK AUTO LOAN DEPARTMENT; UNIVERSAL INSURANCE<br><br>Recurrentes | KLRA202500205<br><br><br><br>Consolidado con | *Revisión* procedente del Departamento de Asuntos del Consumidor (DACo)<br><br>Querella Núm.: PON-2021-0002419<br><br>Sobre: Compra Venta de Vehículo de Motor |
| RAFAEL SANTIAGO RÍOS<br><br>Recurrido<br><br>v.<br><br>LT AUTOS LLC H/N/C TOYOTA MONUMENTAL PONCE; **USAA FEDERAL SAVINGS BANK AUTO LOAN DEPARTMENT**; UNIVERSAL INSURANCE<br><br>Recurrentes | KLRA202500209 | *Revisión* procedente del Departamento de Asuntos del Consumidor (DACo)<br><br>Querella Núm.: PON-2021-0002419<br><br>Sobre: Compra Venta de Vehículo de Motor |

Panel integrado por su presidenta, la Jueza Rivera Marchand[1], la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico a 22 de mayo de 2025.

Comparece LT Autos LLC (en adelante LT Autos) en el alfanumérico **KLRA202500205**, y USAA Federal Savings Bank (en adelante USAA) (en conjunto, parte recurrente), en el alfanumérico **KLRA202500209**, mediante sendos recursos de revisión judicial, en los cuales nos solicitan la revisión de la *Resolución Enmendada*

---

[1] Mediante la Orden Administrativa TA-2025-070 del 9 de mayo de 2025, se designó al Hon. Monsita Rivera Marchand para entender y votar en el caso de epígrafe en sustitución del Hon. Abelardo Bermúdez Torres.

Número Identificador

SEN2025_____

en reconsideración, emitida y archivada en autos el 7 de marzo de 2025 y remitida por correo el día 11, del mismo mes y año, por el Departamento de Asuntos del Consumidor (en adelante DACo).[2] Mediante la resolución recurrida, el DACo declaró *Ha Lugar* una *Querella* presentada por el aquí recurrido, Rafael Santiago Ríos (en adelante, señor Santiago Ríos y/o recurrido) y condenó a este, así como a LT Autos y USAA a responder, en iguales partidas, del balance de $45,140.00 dólares, el cual con los intereses ascendía a $50,826.34 dólares. A su vez, la referida agencia condenó a LT Autos y USAA a, respectivamente, pagarle al señor Santiago Ríos la cantidad de $250.00 dólares, en consideración a los inconvenientes que tuvo que pasar.

Por los fundamentos que expondremos, se confirma la resolución recurrida.

I

De entrada, puntualizamos que esta es la *segunda* ocasión en la que esta Curia atiende un recurso relacionado a la acción del título. En la *primera* ocasión, las partes del título incoaron respectivamente tres (3) recursos, los cuales, por recurrir de la misma resolución, fueron consolidados. Evaluados los recursos, nos vimos forzados a desestimarlos, ya que nos encontrábamos ante un dictamen interlocutorio no susceptible de revisión.[3] Es por lo anterior que, la relación de hechos a continuación se circunscribirá a aquellas instancias procesales pertinentes para la disposición de los dos (2) recursos ante nuestra consideración.

El caso del título inició cuando, el 9 de diciembre de 2020, el señor Santiago Ríos presentó una *Querella* por incumplimiento de contrato, práctica engañosa, daños y perjuicios y otros en contra de

---

[2] Apéndice del recurso KLRA202500205, a las págs. 1-15; Apéndice del recurso KLRA202500209, a las págs. 1-15.
[3] Véase *Sentencia* de los alfanuméricos KLRA202400535, KLRA202400540 y KLRA202400546.

LT Autos, USAA, y Universal Insurance (Universal).[4] En la misma, sostuvo que, allá para el 14 de noviembre de 2019, adquirió mediante compraventa un vehículo de motor marca Toyota del concesionario LT Autos. Alegó que, como parte de la compraventa, obtuvo una póliza de seguro para el referido vehículo. Además, adujo que el precio de compra del vehículo y el costo del seguro fueron financiados por USAA, por un término de setenta y cinco (75) meses. Establecido lo anterior, relató que, el 20 de julio de 2022, estuvo involucrado en un accidente de tránsito en el cual sufrió daños considerables. A esos efectos, se comunicó con Universal para gestionar la reclamación. Sin embargo, la asegurada le comunicó que no le podía pagar cantidad reclamada. Ello, puesto a que su póliza de seguro fue cancelada, ya que nunca se recibieron los pagos de la prima. El señor Santiago Ríos aseveró en su querella que, conforme al contrato de compraventa, quien era responsable de cursar los documentos correspondientes y de realizar el pago para la activación del seguro era LT Autos. Por consiguiente, esgrimió que LT Auto era responsable por los daños y perjuicios sufridos a consecuencia del incumplimiento contractual, los cuales estimó en una cifra no menor de $85,000.00 dólares. Además, le peticionó al DACo que declarara la resolución del contrato de compraventa y condenara a LT Autos al pago de honorarios de abogado por temeridad. Por otra parte, aclaró que no tenía reclamación alguna contra USAA y que su inclusión en el pleito fue por razón de que esta tenía un interés legítimo en el contrato de compraventa en cuestión.

En reacción, el 13 de abril de 2021, LT Autos presentó *Contestación a Querella*.[5] En suma, alegó que en ningún momento

---

[4] Apéndice del recurso KLRA202500205, a las págs. 73-85; Apéndice del recurso KLRA202500209, a las págs. 32-42.
[5] Apéndice del recurso KLRA202500205, a las págs. 86-95.

se llevó a cabo un negocio jurídico entre las partes sobre el seguro del vehículo, y que era responsabilidad del señor Santiago Ríos, contratar con la compañía aseguradora de su preferencia y realizar los pagos correspondientes. Subrayó que, en el contrato de compraventa no surgía una cantidad por concepto de una póliza de seguro. A tenor, puntualizó que el precio total de la compraventa fue de $45,140.00 dólares, el cual no incluía cargos adicionales, pólizas de seguro u otras obligaciones. Al amparo de lo expuesto, sostuvo que la *Querella* no contenía alegaciones que ameritaran la concesión de un remedio a favor del recurrido, por lo que la misma debía ser desestimada.

Posteriormente, el 12 de julio de 2022, el señor Santiago Ríos presentó una *Enmienda a Querella*, para entre otras cosas, excluir a Universal de las partes querelladas, dado a que no existían alegaciones en su contra, y a que había evidenciado que, para la fecha objeto de la controversia, no tenía una póliza de seguro a su favor.[6] Además, enmendó varias de las alegaciones de la *Querella*, entre estas la número nueve (9), para indicar que LT Autos activó la póliza de seguro del vehículo con Universal a través de la agencia de seguro Eastern América Insurance Agency, Inc., pero luego omitió informarle que, posterior a la compra del vehículo, tenía que gestionar los pagos para evitar la cancelación de la aludida póliza.

En respuesta, el 12 de agosto de 2022, LT Autos presentó su *Contestación a Querella Enmendada*.[7] En el escrito, reiteró las defensas esgrimidas en su contestación a la *Querella* original y sostuvo que no tuvo injerencia alguna en la selección de la compañía aseguradora elegida por el señor Santiago Ríos.

---

[6] Apéndice del recurso KLRA202500209, a las págs. 43-45.
[7] Véase Expediente Administrativo Núm. PON-2021-0002419.

De ahí, el DACo emitió la *Resolución* que fue objeto de revisión por esta esta Curia.[8] Luego, se presentaron ante este Tribunal tres (3) recursos apelativos,[9] los cuales fueron consolidados por recurrir respectivamente de la antedicha resolución. De ahí, mediante *Sentencia* del 28 de octubre de 2024, desestimamos los referidos tres (3) recursos, tras juzgar que el DACo, al emitir su dictamen, no incluyó cual sería el devenir de la co-querellada Universal.[10] De manera que, nos encontrábamos ante un dictamen interlocutorio no susceptible de revisión.

Así las cosas, el 6 de febrero de 2025, el DACo emitió, archivó en autos y notificó una *Resolución Enmendada*, la cual fue remitida por correo el día 7 del mismo mes y año.[11] Mediante el aludido dictamen, el DACo declaró *Ha Lugar* la *Querella* y, en consecuencia, condenó a LT Autos, USAA y al recurrido a responder, en iguales partidas, del balance de $45,140.00 dólares, el cual con los intereses ascendía a $50,826.34 dólares. Igualmente, la referida agencia condenó a LT Autos y USAA a respectivamente pagarle al señor Santiago Ríos la cantidad de $250.00 dólares, por los inconvenientes que tuvo que pasar. En cuanto a Universal, el DACo indicó que nada disponía en cuanto a esta parte, por entender que no procedía remedio alguno, dado al desistimiento presentado por el señor Santiago Ríos.

En la referida *Resolución Enmendada*, el DACo esgrimió las determinaciones de hechos siguientes:

1. **Del testimonio del testigo de Universal, Dewel Santiago se desprende:**

   a. Se desempeña como Marketing Supervisor desde hace unos cinco (5) años, lo que implica entre otras cosas el

---

[8] Apéndice del recurso KLRA202500209, a las págs. 46-59.
[9] Entiéndase, los alfanuméricos KLRA202400535, KLRA202400540 y KLRA202400546.
[10] Véase *Sentencia* de los alfanuméricos KLRA202400535, KLRA202400540 y KLRA202400546.
[11] Apéndice del recurso KLRA202500205, a las págs. 16-30.

supervisar a los licitadores, quienes son los que expiden y emiten las pólizas de seguro.

b. Reciben de los concesionarios de auto la información necesaria para la expedición de pólizas.

c. Cuando un concesionario requiere una cotización una vez recibida la información se envía el costo de la prima. En caso de que el vehículo sea adquirido se espera a que el concesionario envíe la documentación requerida por la aseguradora, entre la que se encuentra a solicitud firmada por el cliente, la orden de compra y la licencia de conducir.

d. No recuerda haber visto documento alguno en donde se requiriera el pago para la póliza.

e. En cuanto al endoso de cancelación lo que implica la cancelación de la póliza y se emite luego de que se hacen gestiones de cobro y no recibir pago.

f. Manifestó no haber visto los Exhibit #8(a) y #8(b). No obstante, en cuanto al Exhibit #8(a) estableció que se expide por Universal hacia el concesionario al momento de expedir la póliza ya que es el documento que se envía al banco para hacer constar que el cliente tiene una póliza. En cuanto al Exhibit #8(b) se estableció que es la forma que se le envía al cliente. Esta es enviada directamente por Universal a través de correo a la dirección de este.

g. Los métodos de pago de los seguros de Universal son los siguientes: i) cliente paga la prima del seguro al concesionario, quien le pasa el dinero a la aseguradora para la emisión de la póliza, o, ii) mediante el financiamiento del vehículo que el cliente adquiere. En el caso de las pólizas que se pagan a través del financiamiento del vehículo, es la entidad financiera quien le paga la prima a Universal.

h. En cuanto al endoso de cancelación se entiende que no se emitió pago alguno para la póliza.

i. En el caso de una póliza doble es financiada en su totalidad por el término de los años del financiamiento del vehículo, por lo que debe ser cubierta en un solo pago. Se entiende que, en una póliza doble, el vehículo fue financiado.[12]

2. **Del testimonio del querellante, Rafael Santiago Ríos se desprende:**

a. Es residente de Santa Isabel, Puerto Rico y empleado del servicio postal de Estados Unidos.

---

[12] Apéndice del recurso KLRA202500205, a las págs. 19-20.

b. El 14 de noviembre de 2019 -durante una visita realizó- una compraventa en el concesionario querellado LT Autos.

c. Fue atendido por el vendedor Santiago Vélez quien le mostró dos (2) vehículos de motor, seleccionando el modelo Highlander.

d. El precio de venta del modelo seleccionado era de $45,640.00, a lo cual había que descontar un Bono de $500.00, para un precio final de $45,140.00, con el que estuvo de acuerdo ya que le interesaba realizar la compra.

e. Le realizó entrega al vendedor de una pre-aprobación de USAA que tenía el querellante, al igual que el contrato de pre-aprobación. Dicha pre-aprobación ascendía a la cantidad máxima de $64,200.00.

f. Auscultó con el vendedor sobre la póliza del vehículo ya que interesaba que la misma fuera financiada. Ante esto plantea que el vendedor la indicó que no debía haber problema con su solicitud ya que no debía exceder la cantidad pre-aprobada por USAA.

g. Establece que el Exhibit #2(a) establecía la cantidad de $51,140.00 como cantidad a financiar ya que se incluía en la misma la póliza del auto.

h. La querella de epígrafe fue presentada a raíz de que luego de un accidente ocurrido el 20 de julio de 2020, Universal le indicó que la póliza había sido cancelada por falta de pago y haber denegado beneficio alguno por el accidente.

i. Alega haber seleccionado a Universal como aseguradora luego de que el costo de la prima de la póliza fuera el más económico (Aprox. $4,100.00) y que el concesionario se encargaría de todos los trámites para el financiamiento y la póliza.

j. Acepta que firmó el Exhibit #2(a).

k. Aproximadamente una semana después de la compraventa recibió una llamada de personal del área de finanzas de LT Autos, el cual fue identificado como Jocelyn Touzet.

l. Ante la llamada antes indicada, se comunicó con USAA a los fines de solicitar la forma requerida por la empleada de LT Autos, la cual fue enviada en blanco a personal del concesionario.

m. Cliente niega haber firmado el Exhibit #2(b) a pesar de identificar su firma en el documento.

n. A raíz del accidente ocurrido el 20 de julio de 2020 se comunicó con Universal y luego de que el ajustador evaluó el vehículo de motor quien según el querellante entendió que el vehículo era pérdida total. En adición, el ajustador le indicó que no se podía hacer nada ya que la póliza se había cancelado por falta de pago.

o. Continuó pagando el vehículo de motor para no afectar su crédito.

p. En marzo de 2021 adquirió una Toyota Tacoma.

q. Alega que entre los daños que reclama se encuentra el que el dinero no alcanza para vacaciones o realizar cosas que desea, junto a la adquisición de otro vehículo de motor para poder movilizarse y trabajar, pagando dos (2) vehículos.

r. Por el vehículo objeto de la querella de epígrafe realiza un pago de $677.00 mensuales.

s. Alega que no se preocupó por tener una póliza de Universal porque el vendedor le indicó que no se preocupara ya que ellos se encargarían del resto.

t. Aceptó recibir estados de cuenta de USAA a través de correo electrónico, pero no los revisa todo el tiempo.

u. Aceptó que firmó el documento Orden de Compra a pesar de que no aparecía en la misma información relacionado a la póliza de seguro.[13]

3. **Del testimonio del señor Alan Salem Ramos se desprende lo siguiente:**

a. Es Gerente de Financiamiento de LT Autos con más de veinte (20) años de experiencia, de los cuales siete (7) son con el concesionario querellado.

b. De la situación por la que se presentó la querella de epígrafe no se tiene mucha información, ya que el cliente tenía una pre-aprobación, situación en la que no ven el crédito de este, por lo que ciertos pasos no se tienen que realizar. En estos casos el cliente solo verifica la selección del automóvil.

c. Al cliente se le entrega la factura.

d. Validó que se le presentaron al cliente varias opciones de aseguradoras, siendo Universal la más económica, por lo que el cliente firmó el documento de dicha aseguradora. No obstante, el cliente una vez el banco realizara el trámite final de financiamiento tenía que enviar documentos a Universal.

e. En el contrato de compraventa se desglosa todo lo que está financiado.

4. Conforme al Exhibit #8(a) el 15 de noviembre de 2019 Universal remitió a USAA comunicación sobre la póliza PAD1411171, Prima $4,071, Expediente 4943441, fecha de efectividad 11/14/2019-05/14/2026. En dicha comunicación se le requiere a USAA el pago de la cantidad de $4,071.00. Concretamente la comunicación establece lo siguiente: "***Estimados señores: La póliza de referencia cubre el seguro de doble interés solicitado por nuestro asegurado. Favor de expedir cheque a nuestro favor por la cantidad de $4,071, la cual corresponde al Doble Interés. Cualquier prima no devengada que surge por concepto de cancelación o endoso, si la hubiese, será remitida directamente a ustedes".*** La misma aparece firmada por Jorge Amadeo Pérez del Departamento de Suscripción.

5. De documentación dirigida al querellante por parte de USAA con fecha del 20 de noviembre de 2019 se emite detalle del

---

[13] Apéndice del recurso KLRA202500205, a las págs. 20-22.

préstamo de auto, es decir, del financiamiento. En esta se establece que el balance a financiar asciende a $45,140.00 a una tasa de interés de 3. 74%.[14]

Conforme surge de la *Resolución Enmendada,* y según adelantamos, el DACo al amparo de la evidencia presentada, el derecho aplicable y la credibilidad adjudicada a los testimonios, determinó que la responsabilidad de la situación que propició la *Querella* fue una compartida entre el señor Santiago Ríos, LT Autos y USAA. En cuanto al señor Santiago Ríos, la referida agencia dispuso que su responsabilidad estribó en que este advino en conocimiento de que la cantidad final a financiar por USAA era de $45,000.00 dólares, así como que este debió ser proactivo en dar seguimiento al trámite para solicitar la póliza. Por otra parte, el DACo concluyó que la responsabilidad de LT Autos consistió en que esta debió haber sido clara y concisa en cuanto al balance a financiar. Mientras que, según DACo, USAA era responsable de lo sucedido, puesto a que se le cursó, de parte de Universal, un requerimiento de pago de la póliza el cual nunca se concretó, aun cuando esta debía procurar proteger la garantía del préstamo otorgado.

Inconformes, LT Autos, USAA y el señor Santiago Ríos mediante escritos independientes, le solicitaron al DACo, de manera oportuna, que reconsiderara su dictamen. Sin embargo, la referida agencia, únicamente acogió la moción de reconsideración presentada por el señor Santiago Ríos,[15] a los fines de que la agencia modificara lo ordenado en la *Resolución* Enmendada, para que constara con claridad que LT Autos y USAA debían realizar los pagos que les fueron imputados directamente a este.

Así, pues, el DACo emitió la *Resolución Enmendada* en reconsideración que nos ocupa, la cual fue emitida y archivada en

---

[14] *Íd.,* a las págs. 22-23.
[15] Apéndice del recurso KLRA202500205, a las págs. 65-70; Apéndice del recurso KLRA202500209, a las págs. 157-162.

autos el 7 de marzo de 2025, y remitida por correo el día 11, del mismo mes y año.[16] Mediante el referido dictamen, el DACo preservó lo dispuesto en su *Resolución* del 6 de febrero de 2025. No obstante, según solicitó el aquí recurrido, modificó la orden, para que esta expresara que, en el término improrrogable de treinta días (30), las partes debían cumplir con lo siguiente:

> **1. LT Auto, LLC. HNC Toyota Monumental Ponce realice el pago de $17,192.11 a USAA**, que corresponde a $16,942.11 como parte de su responsabilidad dentro de la situación que propici[ó] la querella de epígrafe y $250.00 al querellante en consideración de los inconvenientes por el cual ha tenido que pasar el querellante le compensamos las molestias o contrariedades creadas a este por la parte querellada. Santiago v. Sears, 102 D.P.R. 515, 518 (1974).

> **2. USAA Federal Savings Bank a que adjudique al balance del préstamo $16,942.11** como parte de su responsabilidad dentro de la situación que propici[ó] la querella de epígrafe toda vez que se le requirió el pago de la prima de la póliza por parte de Universal y no se cumplió con el mismo. En adición, le realice al querellante el pago de la cantidad de $250.00 en consideración de los inconvenientes por el cual ha tenido que pasar el querellante le compensamos las molestias o contrariedades creadas a este por la parte querellada. Santiago v. Sears, 102 D.P.R. 515, 518 (1974).

> 3. El balance restante ($16,942.11) es la partida que le corresponde como su responsabilidad al querellante.

> 4. De los pagos ordenados saldar el balance del préstamo o en caso de no existir deuda al momento de realizar los mismos, deberá realizarse el pago de lo ordenado o de aquella cantidad sobrante al querellante, Rafael Santiago Ríos.[17]

De ahí, tanto LT Autos como USAA acudieron ante nos de forma separada, mediante dos (2) recursos de revisión.

En el recurso **KLRA202500205**, presentado el 7 de abril de 2025, LT Autos esgrimió la comisión de los siguientes dos (2) señalamientos de error:

> 1. ERRÓ EL DACo AL IMPONER RESPONSABILIDAD DE PAGO A LA PARTE AQUÍ RECURRENTE, AUN CUANDO NO EXISTE EN CONTRA DE LT AUTOS LLC. UNA RECLAMACIÓN VÁLIDA COMO CUESTIÓN DE HECHO Y DE DERECHO QUE AMERITE Y JUSTIFIQUE LA CONCESIÓN DE UN REMEDIO A FAVOR DEL RECURRIDO.

---

[16] Apéndice del recurso KLRA202500205, a las págs. 1-15; Apéndice del recurso KLRA202500209, a las págs. 1-15.

[17] Apéndice del recurso KLRA202500205, a la pág. 12; Apéndice del recurso KLRA202500209, a la pág. 12.

2. ERRÓ EL DACo COMO CUESTIÓN DE DERECHO, AL EMITIR UNA ORDEN DISPOSITIVA DE PAGO EN CONTRA DE LT AUTOS LLC. QUE RESULTA CONTRARIA A SUS PROPIAS DETERMINACIONES DE HECHOS PROBADOS Y SUS CONCLUSIONES DE DERECHO.

Por otro lado, en el recurso **KLRA202500209**, presentado el 7 de abril de 2025, USAA alzó la comisión de los siguientes dos (2) señalamientos de error:

PRIMER ERROR: ERRÓ EL DACO AL IMPONER RESPONSABILIDAD A USAA YA QUE EL QUERELLANTE ALEG[Ó] EN LA QUERELLA Y EN LA QUERELLA ENMENDADA QUE NO TIENE RECLAMACI[Ó]N EN CONTRA DE USAA[.]

SEGUNDO ERROR: ERRÓ EL DACO EN CONCLUIR QUE USAA ES LA PARTE RESPONSABLE DEL PAGO DE LA P[Ó]LIZA DE SEGURO[.]

Mediante *Resolución* emitida el 8 de abril de 2025, los antedichos recursos fueron consolidados.

Por otro lado, en la antedicha *Resolución*, concedimos a los recurrentes de cada uno de los recursos acreditar el cumplimiento con la Regla 58 del Reglamento del Tribunal de Apelaciones,[18] para lo cual se les concedió hasta el 15 de abril de 2025. Igual término concedimos al DACo para presentar copia certificada del Expediente Administrativo Núm. PON-2021-0002419.

Ese mismo día, es decir, el 8 de abril de 2025, USAA presentó *Moción acreditando notificación de revisión judicial.* Por su parte, el 11 de abril de 2025, compareció LT Autos para acreditar el cumplimiento con nuestra *Resolución* del 8 de abril de 2025, en lo que a la notificación del recurso respecta. El 25 de abril de 2025, compareció el DACo para presentar copia certificada del Expediente Administrativo, según le fue ordenado.

Por otro lado, el 19 de mayo de 2025, compareció la parte recurrida mediante *un Alegato en oposición a recurso de revisión administrativa.* Habiendo quedado el caso perfeccionado para su adjudicación final, procederemos a exponer el derecho aplicable.

---

[18] 4 LPRA Ap. XXII-B, R. 58.

II

## A. Revisión Judicial

El Tribunal Supremo de Puerto Rico ha sostenido que el derecho a cuestionar la determinación de una agencia, mediante revisión judicial, es parte del debido proceso de ley protegido por la Constitución de Puerto Rico.[19] El Artículo 4.006 (c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico[20] otorga competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas.[21] La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme a la ley y de forma razonable.[22] Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados, y si son compatibles con la política pública que las origina.[23] A esos efectos, la revisión judicial comprende tres (3) aspectos: (i) la concesión del remedio apropiado; (ii) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial, y (iii) la revisión completa y absoluta de las conclusiones de derecho.[24] Nuestro Alto Foro ha establecido que el derecho a una notificación adecuada concede a las partes la oportunidad de tomar conocimiento real de la acción tomada por la agencia. Además, otorga a las personas, cuyos derechos pudieran quedar afectados, la oportunidad para decidir si ejercen los remedios que la ley les reserva para impugnar la determinación.[25]

---

[19] *Asoc. Condómines v. Meadows Dev.*, 190 DPR 843, 847 (2014); *Picorelli López v. Depto. de Hacienda,* 179 DPR 720, 736 (2010).
[20] Ley Núm. 201-2003, 4 LPRA sec. 24y(c).
[21] *Asoc. Condómines v. Meadows Dev.*, supra, a la pág. 847.
[22] *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 264 (2007).
[23] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018).
[24] *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010); *Mun. de. San Juan v. JCA*, 149 DPR 263, 279-280 (1999).
[25] *Asoc. Vec. Altamesa Este v. Municipio de San Juan*, 140 DPR 24, 34 (1996).

Dentro de este marco, los tribunales apelativos, al ejercer su función revisora, deben conceder una gran deferencia a las decisiones emitidas por las agencias, debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados.[26] Igualmente, el Alto Foro ha enfatizado que los tribunales, aplicando el criterio de razonabilidad y deferencia, no deben alterar las determinaciones de las agencias.[27] En mérito de lo anterior, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[28] Ahora bien, lo anterior únicamente surtirá efecto si la decisión se basa en evidencia sustancial que obra en el expediente administrativo.[29] En cuanto a la evidencia sustancial, se ha definido como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[30] Dicho análisis requiere que la evidencia sea considerada en su totalidad, esto es, tanto aquella que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido.[31] Ello, implica que, de existir un conflicto razonable en la prueba, debe respetarse la apreciación de la agencia.[32] Además, la norma de prueba sustancial se sostiene en la premisa de que son las agencias las que producen y determinan los hechos en los procesos administrativos, y no los tribunales.[33]

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción, no pudiendo

---

[26] *Rolón Martínez v. Supte. Policía*, supra, a la pág. 35.
[27] *Íd.*
[28] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).
[29] *Otero v. Toyota*, 163 DPR 716, 727 (2005).
[30] *Batista, Nobbe v. Jta. Directores*, supra, a la pág. 216; *Otero v. Toyota*, supra, a la pág. 728.
[31] *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 437 (1997).
[32] *Hilton v. Junta de Salario Mínimo*, 74 DPR 670, 687 (1953).
[33] Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, Ed. Forum, 2013.

descansar en meras alegaciones.[34] Para ello, deberá demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[35] Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el Tribunal respetará las determinaciones de hecho, y no sustituirá el criterio de la agencia por el suyo.[36] En cambio, las conclusiones de derecho son revisables en todos sus aspectos.[37] En esta tarea, los tribunales están compelidos a considerar la especialización y la experiencia de la agencia con respecto a las leyes y reglamentos que administra.[38] Así pues, si el fundamentos de derecho no conlleva interpretación dentro del marco de la especialidad de la agencia, entonces el mismo es revisable en toda su extensión.[39]

Sin embargo, aun cuando el Tribunal tiene facultad para revisar en todos sus aspectos las conclusiones de derecho de una agencia, se ha establecido que ello no implica que los tribunales revisores tienen la libertad absoluta para descartarlas libremente.[40] Si del análisis realizado se desprende que la interpretación que hace una agencia de su reglamento o de la ley que viene llamada a poner en vigor resulta razonable, el Tribunal debe abstenerse de intervenir.[41] Ahora bien, la deferencia reconocida a las decisiones de

---

[34] *OEG v. Martínez Giraud*, 210 DPR 79, 89 (2022); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 128 (2019); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).
[35] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).
[36] *Otero v. Toyota*, supra, a la pág. 728.
[37] *García Reyes v. Cruz Auto Corp.*, supra, a la pág. 894.
[38] *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75-76 (2000).
[39] *Rivera v. A & C Development Corp.*, 144 DPR 450, 461 (1997).
[40] *Federation Des Ind. v. Ebel*, 172 DPR 615, 648 (2007); *López Borges v. Adm. Corrección*, 185 DPR 603, 626 (2012).
[41] *Cruz v. Administración*, 164 DPR 341, 357 (2005).

las agencias administrativas cede en algunas situaciones: (i) cuando la decisión no esté basada en evidencia sustancial; (ii) cuando la agencia haya errado en la aplicación de la ley; (iii) cuando su actuación resulte ser arbitraria, irrazonable o ilegal; y, (iv) cuando la actuación administrativa lesiona derechos constitucionales fundamentales.[42] Entiéndase que, aunque los tribunales están llamados a conceder deferencia a las decisiones administrativas, tal norma no es absoluta. Ello, puesto a que no puede imprimírsele un sello de corrección automática, bajo el pretexto de deferencia, a determinaciones o interpretaciones administrativas que son irrazonables, ilegales o contrarias a derecho.[43]

### B. Ventas Condicionales a Plazo y Compañías de Financiamiento

Conforme a la Ley de Ventas a Plazos y Compañías de Financiamiento,[44] una venta al por menor a plazos "[s]ignifica toda venta de mercancía; o de servicios rendidos o suplidos, o un acuerdo para suplir o rendir servicios, por un vendedor a un comprador por un precio de venta diferido pagadero a plazos a tenor con un contrato de venta al por menor a plazos". De ordinario, en este tipo de transacción, el crédito que el comprador necesita para adquirir el bien que se pagará a plazos es provisto por una entidad financiera.[45] Ello, puesto a que las compañías dedicadas a la venta al por menor a plazo no poseen el capital para financiar estas operaciones.[46] Así, pues usualmente, cuando se concreta una venta de este tipo, el vendedor acude a una entidad financiera y le cede su posición frente al comprador, a cambio del pago inmediato del precio de la cosa vendida a plazos.[47] Entiéndase que, mediante la referida cesión, el

---

[42] *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 822 (2012), citando a *Empresas Ferrer v. A.R.Pe.,* supra.

[43] *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 2024 TSPR 29, 213 DPR __ (2024).

[44] Artículo 101 (5) de Ley de Ventas a Plazos y Compañías de Financiamiento (Ley de Ventas a Plazos), Ley Núm. 68 de 19 de junio de 1964, 10 LPRA sec. 731.

[45] *Berrios v. Tito Zambrana Auto, Inc.,* 123 DPR 317, 328 (1941).

[46] *Íd.*

[47] *Berrios v. Tito Zambrana Auto, Inc.,* supra, a la pág. 328.

vendedor le cede sus derechos y obligaciones a la entidad financiera hasta que el comprador le pague la totalidad del precio.[48]

Nuestro Tribunal Supremo ha razonado que, mediante un acuerdo de venta a plazos y financiamiento, se crea una relación tripartita, *sui géneris*, entre el comprador, el vendedor y la entidad financiera.[49] A esos efectos, en nuestro ordenamiento, no se permite "que el comprador releve al vendedor de la responsabilidad que este último pudiera tener dentro de los términos del contrato o cualquier otro documento otorgado en conexión con el mismo".[50]Además, en virtud de la relación tripartita generada, el vendedor, será "responsable de asegurar el patrimonio del cesionario que nada ha tenido que ver con la perfección del contrato base".[51] Por su parte, el comprador tendrá la facultad de oponer contra la entidad financiera las mismas reclamaciones o defensas en derecho que tuviera contra el vendedor.[52]

Ahora bien, puntualizamos que, la imposición de responsabilidad solidaria, no procede en los casos en los cuales, en virtud de la aludida relación tripartita, se determine que son responsables tanto el vendedor, así como a la entidad financiera, a menos que del expediente surja una voluntad manifiesta eso fines.[53] Esto, dado a que, conforme se ha establecido en nuestro ordenamiento jurídico, la solidaridad no se presume.[54] De forma que, en la aludida relación contractual, operará la presunción de mancomunidad. [55]

---

[48] *Otero Rivera v. USAA Fed. Savs. Bank*, 2024 TSPR 70, 214 DPR ___ (2024).

[49] *Otero Rivera v. USAA Fed. Savs. Bank*, supra, a la pág. ___.

[50] *Íd.*; Véase Artículo 209 (f) de la Ley Núm. 68, *supra,* 10 LPRA sec. 749.

[51] *Otero Rivera v. USAA Fed. Savs. Bank*, supra, a la pág. ___, citando a J.A. Cuevas Segarra, *La Ley de Ventas Condicionales de Puerto Rico, Jurisprudencia*, 29 Rev. Der. P.R. 185, 190 (1989). (Cita depurada).

[52] *Otero Rivera v. USAA Fed. Savs. Bank*, supra, a la pág. ___; Véase Artículo 202 (4) de la Ley Núm. 68, *supra,* 10 LPRA sec. 742.

[53] *Otero Rivera v. USAA Fed. Savs. Bank*, supra, a la pág. ___.

[54] *Íd.*

[55] *Íd.*

### III

Ante nuestra consideración se encuentran dos (2) recursos consolidados en los cuales se nos ha solicitado la revisión de un mismo dictamen. Uno de los recursos fue presentado por LT Autos, quien aduce que el DACo erró al imponerle responsabilidad, dado a que las determinaciones de hechos y las conclusiones de derecho esgrimidas en la resolución aquí recurrida no justifican la concesión de un remedio. Mientras que, el otro recurso, fue incoado por USAA, quien sostiene igualmente que el DACo falló al imponerle responsabilidad. Ahora bien, distinto a LT Autos, USAA arguye que, en la *Querella*, el recurrido expresó claramente que no tenía ninguna reclamación en su contra. De manera que, la referida agencia, estaba impedida de adjudicarle responsabilidad.

Según relatamos previamente, la resolución que nos ocupa fue producto de una *Querella* presentada por el recurrido ante el DACo, en contra de LT Autos, USAA y Universal. Puntualizamos que, posteriormente se desistió de la reclamación en contra de Universal. En la referida querella, el señor Santiago Ríos alegó que estuvo involucrado en un accidente automovilístico, y que, cuando fue a gestionar la reclamación con Universal, quien a su entender tenía una póliza de seguro a su favor, le informaron que su póliza había sido cancelada, ya que nunca recibieron los pagos de la prima. Así, pues, alegó que LT Autos fue responsable de lo sucedido, dado a que no gestionó los pagos para la activación del seguro. Sin embargo, expresó que, en cuanto a USAA, no tenía reclamación alguna, y que su inclusión en el pleito fue meramente por el interés que esta entidad financiera tenía en el contrato de compraventa.

Tras varias incidencias procesales, el DACo celebró una vista en la cual se presentó el testimonio de: (i) Dewel Santiago, Supervisor de los licitadores que emiten las pólizas de seguro en Universal; (ii) el señor Santiago Ríos, el aquí recurrente, y (iii) Alan

Salem Ramos, Gerente de Financiamiento de LT Autos.[56] Por otro lado, el DACo admitió en evidencia, por estipulación de las partes del título, la siguiente prueba documental:

A. Exhibit #1(a) - Pre-aprobación de financiamiento de USAA (2 págs.)

B. Exhibit #1(b) - Pagaré y términos de financiamiento de USAA (7 págs.)

C. Exhibit #2(a) - Orden de Compra #5438 de LT Autos [llenado a puño y letra](1 pág.) La estipulación es limitada a su autenticidad y no se extiende a su contenido.

D. Exhibit #2(b) - Orden de Compra #5438 de LT Autos [llenado a maquinilla] (1 pág.) La estipulación es limitada a su autenticidad y no se extiende a su contenido.

E. Exhibit #3 - "Dealer Funding Request" y confirmación de FAX (2 págs.)

F. Exhibit #4- Addendum al Pagaré de USAA (3 págs.)

G. Exhibit #5 - Wire Payment [Evidencia oficial de transferencia de USAA al concesionario] (1 pág.)

H. Exhibit #6 - Solicitud de Seguro de Automóvil Privado (3 págs.)

I. Exhibit #7 - Póliza de Seguro (42 págs.)

J. Exhibit #8(a) - Carta de requerimiento de pago de Universal a USAA el 15 de noviembre de 2019 (2 págs.)

K. Exhibit #8(b) - Carta cursando copia de la póliza de seguro enviada por Universal a USAA el 15 de noviembre de 2019 (3 págs.)

L. Exhibit #9 - Endoso de no cubierta de Universal [febrero 2020] (1 pág.)

M. Exhibit #10 - Recibo de gastos legales de la parte querellante (1 pág.).[57]

Evaluada la referida prueba oral y documental, el DACo declaró *Ha Lugar* la *Querella* presentada por el recurrido y determinó que tanto este, como LT Autos y USAA, eran responsables por la cancelación de la póliza. En consecuencia, condenó al señor

---

[56] Apéndice del recurso KLRA202500205, a las págs. 4-8; Apéndice del recurso KLRA202500209, a las págs. 4-8.

[57] Apéndice del recurso KLRA202500205, a la pág. 4; Apéndice del recurso KLRA202500209, a las págs. 4.

Santiago Ríos, a LT Autos y USAA a responder, en iguales partidas, por el balance de $45,140.00 dólares, el cual con los intereses ascendía a $50,826.34 dólares. A su vez, el DACo condenó a LT Autos y USAA a respectivamente pagarle al señor Santiago Ríos la cantidad de $250.00 dólares, en consideración a los inconvenientes que tuvo que pasar.

Posteriormente, la referida agencia enmendó la aludida resolución en dos (2) ocasiones. La *primera*, motivada por nuestra *Sentencia* del 28 de octubre de 2024,[58] para establecer que no se disponía nada en contra de Universal, dado a que el señor Santiago Ríos había desistido de la reclamación en su contra. Mientras que la *segunda*, fue motivada por una moción de reconsideración presentada por el recurrente, y fue enmendada a los fines de que constara en la orden de la resolución que nos ocupa que, de no existir una deuda al momento en el cual LT Autos y USAA fuesen a emitir los pagos a los que fueron condenados, debían realizar el pago de lo ordenado, o de aquella cantidad sobrante, al señor Santiago Ríos. Además, el DACo aclaró que la cantidad de $250.00 dólares que se le impuso respectivamente a LT Autos y a USAA, para compensarle al recurrente por los inconvenientes que tuvo que pasar, se le debían pagar directamente a este.

Establecido lo anterior, nos disponemos a discutir los errores esgrimidos por LT Autos y USAA.

De entrada, puntualizamos que, en cuanto a los dos (2) errores alzados por LT Autos, en el alfanumérico KLRA202500205, los atenderemos de manera conjunta por estar íntimamente relacionados. Dicho lo anterior, reiteramos que, en su recurso de revisión judicial, LT Autos plantea que las determinaciones de hechos esgrimidas por el DACo no justifican que se le haya impuesto

---

[58] Véase *Sentencia* de los alfanuméricos KLRA202400535, KLRA202400540 y KLRA202400546.

responsabilidad, ni tampoco que se haya concedido un remedio a favor del señor Santiago Ríos. No estamos de acuerdo.

Conforme esbozamos previamente, al ejercer nuestra función revisora, debemos conceder deferencia a las decisiones de las agencias, debido a su experiencia y conocimiento especializado en los asuntos que les han sido encomendados.[59] Así, pues, en la medida de los posible, nos debemos abstener de alterar las determinaciones de las agencias.[60] Ahora bien, en virtud de esta deferencia, no podemos concluir automáticamente que las determinaciones e interpretaciones de la agencia son correctas.[61] Para prevenir lo anterior, debemos de evaluar si la decisión se basa en evidencia sustancial que obra en el expediente administrativo.[62] A esos efectos, la parte promovente deberá demostrar que existe otra prueba en el expediente que impide concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[63] En consecuencia, si la parte afectada no demuestra lo anterior, estaremos impedidos de sustituir el criterio de la agencia.[64] De otra parte, es menester subrayar que, pese a que las conclusiones de derecho son revisables en todos sus aspectos, este foro apelativo debe considerar la experiencia de la agencia en cuanto a los reglamentos y leyes que administra.[65]

Luego de examinar detenidamente el expediente administrativo, nos es forzoso concluir que lo dispuesto por la agencia en la resolución recurrida, en cuanto a LT Autos, fue correcto y razonable ante lo que obrara en el expediente y conforme las leyes y reglamentos aplicables. Además, entendemos que LT Autos no fue capaz de demostrar que la decisión de la agencia fue

---

[59] *Rolón Martínez v. Supte. Policía*, supra, a la pág. 35.
[60] *Íd.*
[61] *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra.
[62] *Otero v. Toyota*, supra, a la pág. 727.
[63] *Gutiérrez Vázquez v. Hernández y otros*, supra, a la pág. 244.
[64] *Otero v. Toyota*, supra, a la pág. 728.
[65] *García Reyes v. Cruz Auto Corp.*, supra*,* a la pág. 894.

irrazonable o que obraba en el expediente otra evidencia que ameritaba resolver el caso de manera distinta. Peor aún, LT Autos no presentó prueba oral, para la consideración de este Tribunal, pese a que peticionó a esta Curia revisar las determinaciones de hechos esgrimidas por la agencia, las cuales estaban basadas en los testimonios presentados en la vista celebrada por el DACo.

De las determinaciones de hecho establecidas por la agencia, al amparo del testimonio del señor Santiago Ríos, se desprende que este "auscultó con el vendedor sobre la póliza del vehículo ya que interesaba que la misma fuera financiada".[66] A esos efectos, "el vendedor le indicó que no debía haber problema con su solicitud ya que este no debía exceder la cantidad pre-aprobada por USAA". Pese a lo anterior, surge del documento intitulado *Dealer Funding Request,* marcado como Exhibit #3 y admitido en evidencia por estipulación de las partes, que LT Autos únicamente le solicitó a USAA que financiara la cantidad de $45,140.00 dólares.[67] Entiéndase que, LT Autos solamente solicitó a USAA financiar el costo del vehículo de motor, y no así el costo de la póliza de seguro, conforme le había requerido el señor Santiago Ríos. Es por lo anterior que, coincidimos, al igual que el DACo, que LT Autos fue responsable de la cancelación de la póliza de seguro al omitir solicitarle a USAA financiar la póliza de seguro para el vehículo de motor adquirido por el recurrido, aun cuando este le había sido claro al vendedor que interesaba que, junto con el costo del vehículo, se le financiara la póliza de seguro.

Huelga resaltar, además, que, conforme indicamos en nuestra previa exposición doctrinal, en virtud de la relación tripartita *sui*

---

[66] Véase Determinación de Hecho Núm. 2 (f) de la *Resolución Enmendada* en reconsideración, en el alfanumérico KLRA202500205, a la pág. 6, y en el alfanumérico KLRA202500209, a la pág. 6.
[67] Apéndice del recurso KLRA202500205, a la pág. 81; Apéndice del recurso KLRA202500209, a la pág. 30.

*géneris* que se genera en un contrato de venta condicional a plazos, como el contrato que aquí nos ocupa, el vendedor es "responsable de asegurar el patrimonio del cesionario que nada ha tenido que ver con la perfección del contrato base". Por ende, LT Autos debió haber sido más diligente y cerciorarse que el comprador estaba consciente de que no se le había financiado la póliza de seguro del auto, de forma que, debía hacerse responsable del pago de prima. Ello, dado a que, sin una póliza de seguro activa, la acreencia USAA estaba desprotegida. Así, pues, LT Autos incumplió con su deber de asegurar el patrimonio del cesionario. En virtud de lo expuesto, concluimos que los errores esgrimidos por LT Autos no se cometieron.

Establecido los anterior, pasamos a discutir los errores esgrimidos por USAA, en el alfanumérico KLRA202500209, los cuales, al igual que los esbozados por LT Autos, atenderemos en conjunto por estar íntimamente relacionados.

Conforme adelantamos, USAA esencialmente plantea que el DACo no le debió haber impuesto responsabilidad, dado a que en la *Querella* no se incluyeron alegaciones en su contra. Luego de examinada la referida querella, es cierto que el recurrido expresó que no tenía ninguna reclamación en contra de USAA y que su inclusión en la querella se limitaba a que formara parte del procedimiento adjudicativo en el cual tenía un interés legítimo en vista del contrato de financiamiento.[68] Por otro lado, surge de la *Enmienda a Querella* que, aunque el señor Santiago Ríos enmendó varias de sus alegaciones, no alteró lo anteriormente expresado en cuanto a USAA, ni añadió ninguna reclamación en su contra.[69] Ahora bien, según indicamos previamente, dado a la relación

---

[68] Apéndice del recurso KLRA202500205, a la pág. 75; Apéndice del recurso KLRA202500209, a la pág. 39.
[69] Apéndice del recurso KLRA202500209, a las págs. 43-45.

tripartita *sui géneris* que se genera en el tipo de contrato que nos ocupa en este caso, en el cual se pactó la compraventa de un vehículo de motor a plazos, y, a su vez, se suscribió un contrato para financiar la referida compraventa, "el comprador tiene la facultad de oponer contra la entidad financiera las mismas reclamaciones o defensas en derecho que tuviera contra el vendedor".[70] Concluimos que, en virtud de esa relación *sui géneris* que se generó, entre el vendedor, comprador y compañía de financiamiento, USAA no podía cruzarse de brazos ante el hecho de que el señor Santiago Ríos nunca envió los pagos correspondientes a la prima de la póliza de seguro. Más aun cuando, sin una póliza de seguro, su acreencia estaba desprotegida.

Según los autos ante nuestra consideración, no hay duda de que USAA únicamente le financió al señor Santiago Ríos el costo del vehículo, y que el referido financiamiento de ninguna manera incluyó la prima de la póliza de seguro para el vehículo de motor, ya que LT Autos no le solicitó a USAA incluir en el financiamiento el costo de la prima.[71] A esos efectos, USAA no podía unilateralmente enviarle a Universal el pago de la prima, puesto a que esta desconocía que el señor Santiago Ríos tenía una expectativa de que la referida póliza fuese financiada. Asimismo, según los autos, es claro que, en el contrato de financiamiento, USAA estableció que en el evento de que el comprador fallara en adquirir una póliza de seguro para el vehículo, esta *podría* optar adquirir un seguro.[72]

---

[70] *Otero Rivera v. USAA Fed. Savs. Bank*, supra, a la pág. ___; Véase Artículo 202 (4) de la Ley Núm. 68, *supra.*

[71] Apéndice del recurso KLRA202500205, a las págs. 81-84; Apéndice del recurso KLRA202500209, a las págs. 28-30.

[72] El Exhibit 1(b), admitido en evidencia por estipulación de las partes, intitulado *Pagaré y términos de financiamiento de USAA*, indica en la página número seis (6): "In the event I fail to acquire or maintain insurance, you (after providing notice as may be required by law) may buy insurance to protect your interest in the Property and add the cost of insurance to the balance due on this Loan. At your option, you may adjust my payments under this Loan Agreement so that I pay the new principal balance at the applicable interest rate over the remaining term of my Loan". Véase Apéndice del recurso KLRA2020500205, a la pág. 110; Apéndice del recurso KLRA2020500209, a la pág. 23.

Entiéndase que, según las cláusulas del contrato de financiamiento, USAA no estaba obligada a adquirir una póliza para proteger su acreencia. No obstante, lo anterior, surge del expediente que, el 15 de noviembre de 2019, Universal le envió una comunicación a USAA en la que detalló, entre otras cosas, "cualquier prima que surja por concepto o endoso, si la hubiese, será remitida directamente a ustedes". Sin embargo, no consta de los autos ante nuestra consideración que USAA hubiese hecho gestión alguna. Entiéndase, USAA no se comunicó con el señor Santiago Ríos, ni con Universal, para cerciorarse que había claridad en cuanto a que la entidad financiera no había financiado la póliza y que no era responsable de emitir los pagos referentes a esta. Es por lo anterior que, coincidimos en que el DACo no falló al determinar que USAA era responsable por lo cancelación de la póliza de seguro. Esto, puesto que la relación *sui géneris* habida entre las partes le impedía cruzarse de brazos, pese a que no financió la póliza de seguro. Somos de criterio de que, si USAA hubiese sido diligente al comunicarse con el señor Santiago Ríos para reiterarle que debía hacer los pagos de la prima de la aludida póliza de seguro, los hechos que provocaron la presentación de la *Querella* que nos ocupa se pudieron haber evitado. En consecuencia, concluimos que los errores esgrimidos por USAA no se cometieron.

Por último, recordemos que nuestro más Alto Foro ha razonado que "la apelación o revisión se da contra la sentencia o decisión apelada; es decir, contra el resultado y no contra sus fundamentos". A tales efectos, y por todo lo antes expuesto, colegimos que procede confirmar la resolución aquí recurrida.

IV

Por los fundamentos que anteceden, se *confirma* el dictamen recurrido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones